# Wytheville

## DRURY H. MARROW v. ROWLEY FERGUSON AND A. H. FERGUSON.

June 22, 1944.

Record No. 2792.

Present, All the Justices.

The opinion states the case.

*W. Henry Cook* and *Hutcheson & Hutcheson*, for the plaintiff in error.

*Hodges & Dortch*, for the defendants in error.

HUDGINS, J., delivered the opinion of the court.

Rowley Ferguson agreed to purchase from R. H. Bugg a lot in the town of South Hill, Virginia, fronting 60 feet on the south line of Virginia street and extending back between parallel lines 220 feet. This lot was part of a larger parcel of land owned by Bugg. It was agreed that title to the property should be taken in the name of A. H. Ferguson, who promised to advance the money for the purchase of the lot and the erection of a dwelling. The parties jointly instructed L. B. Smith, an attorney, to have two lots surveyed and appropriate markers placed on the ground, and to prepare the deed to one of the lots and have it executed and recorded.

This lot was in what was known as Ben Matthews' addi-

tion to the town of South Hill. A plot of this property, dividing it into lots, streets and alleys, had been duly recorded in April, 1928. While Virginia street is clearly shown on the map, it had not been cleared, opened or definitely marked on the ground in front of the lots in question. L. B. Smith, pursuant to his instructions, engaged D. H. Marrow, a certified surveyor, delivered to him the map of the Matthews addition to the town of South Hill, and pointed out on the map the lots owned by Bugg and the lot to be plotted and conveyed to Ferguson. Marrow went upon the land, made a plot of the two lots and drove iron pins in the ground to indicate the four corners of each lot. This plot was delivered to Smith, who prepared the deed and had it executed and recorded.

Rowley Ferguson's business, driving a bread truck, compelled him to be out of town during most of the day. However, on the afternoon of the day he was informed that the deed had been executed, he and Snead Willis went on the lot and saw the iron pins, freshly driven in the ground, indicating the four corners of his lot. Relying upon the fact that two of the pins indicated the exact line of Virginia street, Ferguson selected the site for the proposed dwelling, the front of which was intended to be located on the lot 35 feet from the south line of Virginia street on a line with the front of the old Matthews house some distance away. Ferguson directed Willis to show this exact location of the proposed dwelling to the parties whom he had engaged to construct the building. This was done and the dwelling was constructed on this location at a cost of approximately $3,600.

Several months after the Rowley Ferguson residence was built, the Matthews residence was purchased by a Mr. Anderson, who required Matthews to give him a plot to the residence lot. Marrow, in making this plot, discovered that the original plot made by him for Ferguson extended 26 feet out in Virginia street, which placed the front porch of the Ferguson residence within 6½ feet of the south line of Virginia street.

Rowley Ferguson and A. H. Ferguson instituted this action to recover damages for the alleged error of D. H. Marrow, the surveyor, in marking the lot upon the ground. The jury returned a verdict for plaintiffs in the sum of $1,000, on which the trial court entered judgment. From that judgment the defendant in the trial court obtained this writ of error.

Defendant's first assignment of error is based on the court's instruction to the jury that the measure of damages, if any, "would be the cost to move plaintiffs' residence back so as to give plaintiffs a front yard 25 or 30 feet from street line together with such other damages as naturally flow therefrom."

Plaintiffs were proceeding on the theory that the true measure of their damages was the difference in value of their property with the front of the dwelling 6½ feet from the street and with the front 25 or 30 feet from the street line. However, on cross-examination of several of plaintiffs' witnesses, defendant elicited the fact that their opinion on the diminution in value was based on the cost of moving the dwelling 25 or 30 feet and consequential damages flowing therefrom. Furthermore, in the introduction of his evidence in chief, defendant confined his inquiry on damages to the cost of moving the house 25 or 30 feet. Plaintiffs' proof of damage varied from $1,000 to $1,500 and made no distinction between the difference in market value and the cost of moving the house to the desired location. The preponderance of testimony, all of which seemed to have been established by defendant, either in his cross-examination of plaintiffs' witnesses or on his evidence in chief, was based on the cost of moving the house 25 or 30 feet back from the street. The amount of damage proven seemed to be the same, whether based on the difference in market value or based on the cost of moving the house, except that one witness for defendant stated that in his opinion the house could be moved to the desired location for $850. Under the circumstances, the instruction given gave the defendant the advantage of the least amount of

damages proven. Inasmuch as he developed the theory that the measure of damages was the cost of moving the house 25 or 30 feet from the street, he cannot now change his theory, reverse himself and ask for a different measure of damages to be applied. We find no reversible error in the giving of this instruction.

Defendant objected to the giving of plaintiffs' instruction F, which told the jury that a plot of land duly recorded is a part of the public records of the title to said land.

This is a correct statement of the law, but it has no specific bearing on the evidence in this case as it is conceded that the plot made by Marrow was correct in all its details. The point at issue was the exact location of the lot, which was described in the plot, on the ground. The instruction should not have been given as it has no particular bearing on the facts, but it is inconceivable that the jury could have been misled by this abstract statement of the law. A careful inspection of all the instructions shows that the jury was fully and fairly instructed on the law applicable to the evidence introduced by the parties.

Defendant assigns error to the action of the court in permitting the introduction of two plots or sketches made of the lot by Douglas Gregory, another surveyor, on the ground that one of the plots contains the following memorandum: "Points A, B & C, on this map, pointed out to me by Mr. Hodges, as corners used by Mr. Marrow in the survey of Oct. 1940."

Before the introduction of these sketches, other witnesses had testified that the point, designated A on these plots, was the northeast corner of the second lot as surveyed by Marrow; that point B was the northwest corner of the Ferguson lot surveyed and shown on Marrow's plot; and that the two corners projected 26 feet into Virginia street. Point C, designated by an iron pin, was the southwest corner of the Ferguson lot as marked on the ground by Marrow and was 26 feet short of the extreme southwest corner intended to be included in the description of the lot conveyed to Ferguson. These sketches simply visualized the

testimony introduced by plaintiffs. Other witnesses had stated that they saw Marrow, while he was making the survey, drive the pin and stake at points A and B.

Defendant testified that his plot of the two Bugg lots was correct and that he did not establish the three corners as shown and designated on Gregory's sketches as A, B and C.

■ Eliminating the objectionable memoranda, the Gregory plots or sketches were clearly admissible. The hearsay memoranda on these sketches should have been deleted before they were introduced in evidence, but, under the circumstances, their admission was harmless error.

The defendant's last assignment of error is to the fact that the court limited him in the scope of his argument to the jury. The record, incorporating the exception on which this assignment is based, is vague and indefinite. It does not present sufficient facts for this court to pass upon the merits of the question.

A careful review of the evidence certified convinces us that substantial justice has been attained and that the trial court committed no reversible error in the admission of evidence or in the instructions given to the jury. The judgment is affirmed.

*Affirmed.*